## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NOVATION COMPANIES, INC., *et al.*,[1] | Case No. 23-11153 (JTD) |
| | (Jointly Administered) |
| Debtors. | **Docket Ref. Nos. 101 & 136** |

### NOTICE OF FILING OF FURTHER AMENDED PLAN SUPPLEMENT

**PLEASE TAKE NOTICE** that, on September 8, 2023, the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") filed the *Notice of Filing of Plan Supplement for Debtors' Joint Prepackaged Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 101] (as may be amended, supplemented, or modified from time to time, the "**Plan Supplement**"), which was amended on September 29, 2023 [Docket No. 136]. The Debtors reserved their rights to further amend, supplement or modify the Plan Supplement.

**PLEASE TAKE FURTHER NOTICE** that, on October 6, 2023, the United States Bankruptcy Court for the District of Delaware entered an order [Docket No. 150] (the "**Confirmation Order**") confirming the *Debtors' Joint Prepackaged Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, which was attached to the Confirmation Order as Exhibit A (the "**Plan**").[2]

**PLEASE TAKE FURTHER NOTICE** that the Debtors have amended, supplemented or modified the Management Incentive Plan, Schedule of Assumed Executory Contracts,[3] Schedule

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Novation Companies, Inc. (0661), Novation Holding, Inc. (7576), Healthcare Staffing, Inc. (6045), and NovaStar Mortgage, LLC (0743). The mailing address for each of the Debtors is 1724 Phoenix Parkway, Building 600, College Park, GA 30349.

[2]  Capitalized terms used but not defined herein shall have the meaning given to such terms in the Confirmation Order and Plan, as applicable.

[3]  Notwithstanding anything to the contrary in the Plan and the Confirmation Order, as set forth in Section 9.01 of the Plan, the Reorganized Debtors reserve the right to alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts or the Schedule of Rejected Executory Contracts, including to remove or add any Executory Contracts or Unexpired Leases, at any time through and including thirty (30) days after the Effective Date. Moreover, the Debtors and the Reorganized Debtors, as applicable, explicitly reserve their rights to reject or assume their Executory Contracts or Unexpired Leases pursuant to section 365 of the Bankruptcy Code, and nothing herein (a) alters in any way the prepetition nature of the Executory Contracts or Unexpired Leases or the validity, priority, or amount of any Claims of a counterparty to an Executory Contract or Unexpired Lease against the Debtors and their estates or the Reorganized Debtors; (b) creates a postpetition contract or agreement; or (c) elevates to administrative expense priority any Claims of a counterparty to an Executory Contract or Unexpired Lease against the Debtors and their estates or the Reorganized Debtors.

of Rejected Executory Contracts,[4] and list of initial board of directors of the Reorganized Debtors (other than NovaStar)[5] (collectively, the "**Modified Plan Supplement Exhibits**"), which are **Exhibits E**, **F**, **G**, and **I** to the Plan Supplement.

PLEASE TAKE FURTHER NOTICE that, given the limited number of amendments, modifications and supplements provided for herein to the Modified Plan Supplement Exhibits, the Modified Plan Supplement Exhibits are being filed as blacklines. The documents and designations contained in the Plan Supplement that have not been materially amended, supplemented or modified at this time are not included in this Notice.

PLEASE TAKE FURTHER NOTICE that copies of the Confirmation Order, the Plan and the Plan Supplement may be obtained upon request of the undersigned counsel for the Debtors at the address specified below, and are on file with the Clerk of the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801, where they are available for review between the hours of 8:00 a.m. to 4:00 p.m. (ET). The Confirmation Order, the Plan and the Plan Supplement are also available for inspection on the Court's website at https://pacer.uscourts.gov, or free of charge on the website of the Debtors' claims and noticing agent, Stretto, Inc., dedicated to these chapter 11 cases, https://cases.stretto.com/Novation/.

PLEASE TAKE FURTHER NOTICE that subject to the terms and conditions of the Plan, the Debtors reserve all rights to further amend, supplement or modify the Plan Supplement and any of the documents and designations contained therein.

Dated: October 25, 2023
      Wilmington, DE

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Robert F. Poppiti, Jr.*

Robert S. Brady (No. 2847)
Robert F. Poppiti, Jr. (No. 5052)
Allison S. Mielke (No. 5934)
Kristin L. McElroy (No. 6871)
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
Email: rbrady@ycst.com
      rpoppiti@ycst.com
      amielke@ycst.com
      kmcelroy@ycst.com

*Counsel to the Debtors*

---

[4]  *See* footnote 3, above.

[5]  As set forth in Section 5.03 of the Plan, after the Effective Date, NovaStar shall continue to be member managed in accordance with its applicable operating agreement and other governing documents, as may be amended.

## **EXHIBIT E**

**Management Incentive Plan**

~~Final Form~~Execution Version

# NOVATION COMPANIES, INC.

## ~~PHANTOM SHARE INCENTIVE~~STOCK APPRECIATION RIGHTS PLAN

**(Effective as of October 24, 2023)**

756357319

## NOVATION COMPANIES, INC.

## ~~PHANTOM SHARE INCENTIVE~~STOCK APPRECIATION RIGHTS PLAN

### 1. Establishment; Purpose.

a) Novation Companies, Inc. (the "***Company***") hereby establishes the Novation Companies, Inc. ~~Phantom Share Incentive~~Stock Appreciation Rights Plan (the "***Plan***"), effective as of [●]October 24, 2023 (the "***Effective Date***").

b) The purpose of the Plan is to retain and motivate certain selected officers, employees, non-employee directors, consultants and advisors of the Company and its Affiliates through the grant of ~~Phantom Shares~~SARs (as defined below) on the terms set forth herein.  Capitalized words and phrases not otherwise defined in the body of the Plan are defined in Section 2 below.

### 2. Definitions.

a) "***Affiliate***" means, with respect to any Person, any other Person directly or indirectly controlling, controlled by or under common control with such Person.  For purposes of this definition, "control" (including with correlative meanings, the terms "controlling", "controlled by" or "under common control with"), as used with respect to any Person, shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities or by contract or otherwise.

b) "***Award Agreement***" means a ~~Phantom Share~~SAR award agreement in the form authorized by the Board and attached hereto as **Exhibit A**, which form may be amended, modified or supplemented from time to time as determined by the Board in its sole discretion.

c) "***Beneficiary***" means an individual who succeeds, upon the death of a Participant, to the rights of the Participant with respect to one or more ~~Phantom Shares~~SARs through the Participant's will or by reason of the laws of decent and distribution.

d) "***Board***" means the Board of Directors of the Company.

e) "***Cause***" means (i) being formally charged by law enforcement with a felony; (ii) commission of an act of fraud, embezzlement or misappropriation of funds; (iii) unlawful use (including being under the influence) or possession of illegal drugs in the workplace or that otherwise impairs the Participant's ability to perform his or her duties; (iv) willful or prolonged and unexcused absence from work (other than by reason of Disability or Board-approved leave of absence); (v) willful and repeated failure or refusal to perform the lawful and material employment duties related to a Participant's position or duties as

2

756357319

from time to time assigned to such Participant that are consistent with such Participant's position (other than by reason of Disability or Board-approved leave of absence); (vi) breach of fiduciary duty or commission of any willful, intentional or grossly negligent act in each case having the effect of materially injuring the finances, business or reputation of the Company; (vii) violation in any material respect with the Company's published rules or policies, as in effect or amended from time to time; or (viii) material breach of any written agreement with the Company.

f) "***Code***" means the Internal Revenue Code of 1986, as amended, and the rules and regulations promulgated thereunder.

g) "***Contingent Payment***" means an amount of additional consideration that may be paid to the Company or the shareholders of the Company on or after an Exit Event in consideration for the sale of their Shares in such Exit Event pursuant to the Exit Event's transaction documents, including, but not limited, to, payments from any escrow, holdback, earn-out or similar payment.

h) "***Disability***" means a Participant's inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or can be expected to last for a continuous period of not less than twelve (12) months, as determined in accordance with Section 409A.

i) "***Exercise Date***" means the date on which vested SARs are exercised as set forth in Section 5.

j) i) "***Exit Event***" means the first to occur of any of the following:

  a. the consummation of a purchase or other acquisition by any Person, entity or group of Persons (within the meaning of Section 13(d) or 14(d) of the Exchange Act or any comparable successor provisions, other than an acquisition by an Affiliate of the Company), of "beneficial ownership" (within the meaning of Rule 13d-3 promulgated under the Exchange Act) of 50% or more of the outstanding Shares or the combined voting power of the Company's then outstanding securities entitled to vote generally;

  b. the consummation of a reorganization, merger, consolidation, acquisition, share exchange or other corporate transaction of the Company, in each case, with respect to which Persons who were Shareholders immediately prior to such reorganization, merger or consolidation do not, immediately thereafter, own more than 50% of the combined voting power entitled to vote generally in the election of directors of the reorganized, merged or consolidated company's then outstanding securities; or

756357319

c. the sale or conveyance of all or substantially all of the assets of the Company to a Person who is not an Affiliate.

provided, if an Exit Event would give rise to a payment or settlement event with respect to any ~~Phantom Share~~SAR that constitutes "nonqualified deferred compensation" (within the meaning of Section 409A), the transaction or event constituting the Exit Event must also constitute a "change in control event" (as defined in Treasury Regulation §1.409A-3(i)(5)) in order to give rise to the payment or settlement event for such ~~Phantom Share~~SAR, to the extent required by Section 409A. Notwithstanding the foregoing, no Exit Event shall be deemed to occur as a result of any transaction between or among two or more of the Persons who own the Shares as of the Effective Date of this Plan.

k) ~~j)~~ "**Fair Market Value of a Share**" means (a) in the case of an Exit Event, the fair market value of the Company determined by the Board in good faith based on the value of the consideration to be received in an Exit Event but no greater than the Net Cash Proceeds per Share received by the Company or its Shareholders, or (b) if no Exit Event has occurred, the fair market value of the Company as determined by the Board in good faith determined using such discounting factors as determined by the Board in its sole discretion.

l) ~~k)~~ "**Grant Date**" means the date specified as the Grant Date in the applicable Award Agreement.

m) ~~l)~~ "**Net Cash Proceeds**" means the cash proceeds received by the Company or the Company's Shareholders, as applicable, as the Exit consideration, at the closing of the Exit transaction net of all transaction costs as determined by the Board of Directors, including, for example, legal fees, investment banking fees, accounting fees, and employee retention payments. "Net Cash Proceeds" does not include any non-cash consideration other than publicly tradeable securities, or any amounts that the Company's selling Shareholders have agreed to re-invest in the new or surviving entity following the Change in Control.

n) ~~m)~~ "**Participant**" means any officer, employee, non-employee director, consultant or advisor of the Company and its Affiliates of the Company or an Affiliate to whom the Board determines, in its sole discretion, to make a grant of ~~Phantom Shares~~SARs pursuant to an Award Agreement.

~~n) "**Payment Event**" means the earliest of (i) an Exit Event or (ii) a Participant's termination of employment or service with the Company or any of its Affiliates, including by reason of death or Disability.~~

o) "**Person**" means an individual, a partnership, a joint venture, a corporation, a limited liability company, an association, a trust, an estate or other entity or organization, including a government or any department or agency thereof.

4

~~756357319~~

p) "~~*Phantom Shares*~~" ~~means awards granted under the Plan giving a Participant the right to receive, subject to the terms and conditions of the Plan and the applicable Award Agreement, an amount in cash for each vested Phantom Share held upon the occurrence of a Payment Event that is equal to the Fair Market Value of a Share of the Company, as determined by the Board in its sole discretion in accordance with the terms of the Plan.  If the Payment Event is an Exit Event which provides for Contingent Payments, subject to the terms and conditions of the Plan and the applicable Award Agreement, each Vested Phantom Share gives a Participant the right to receive in cash an amount in equal to the amount per Share paid, if any, in respect of a Contingent Payment.~~

p) ~~q)~~ "*Restrictive Covenants*" means the restrictions imposed by the Company or any of its Affiliates in an employment or consulting agreement or other agreement applicable to a Participant between the Participant and the Company or any of its Affiliates or otherwise on the ability of the Participant to disclose confidential information of the Company or its Affiliates; compete with the Company or its Affiliates; disparage the Company or its Affiliates or their officers, directors, or employees; solicit employees, customers, vendors, or suppliers; use or disclose inventions; or other similar restrictions.

q) ~~r)~~ "*Section 409A*" means Section 409A of the Code and the rules and regulations promulgated thereunder, as they may be amended from time to time.

r) "*Share*" means a share of Stock.

s) "*Shareholder*" means a holder of a Share.

t) ~~s)~~ "*~~Share~~Stock*" means ~~a share of~~the Common Stock, par value **$0.01** per share, of the Company.

~~t) "*Shareholder*" means a holder of a Share.~~

u) "*Stock Appreciation Right*" or "*SAR*" means a right to receive, subject to the terms and conditions of the Plan and the applicable Award Agreement, in cash, the excess of (i) the Fair Market Value of a Share on the Exercise Date, over (ii) the Fair Market Value of a Share on the Grant Date (the "*Spread Amount*").  If the Exercise Date is the date of an Exit Event which provides for Contingent Payments, subject to the terms and conditions of the Plan and the applicable Award Agreement, each Vested SAR gives a Participant the right to receive, in cash, an amount in equal to the amount per Share paid, if any, in respect of a Contingent Payment.

v) ~~u)~~ "*Termination Date*" means the first day occurring on or after the Grant Date of any ~~Phantom Shares~~SARs on which the Participant is not employed by the Company or any of its Affiliates or in the case of a non-employee, the Participant's termination of service with the Company and each of its Affiliates, regardless of the reason for the termination of employment or service; provided that a termination of employment shall not be

756357319

deemed to occur by reason of a transfer of the Participant between the Company and an Affiliate of the Company or between two (2) Affiliates of the Company; provided, further, that the Participant's employment shall not be considered terminated while the Participant is on a bona fide leave of absence from the Company or an Affiliate of the Company approved by the Company or other Person for which the Participant provides services; provided, further, if a Termination Date would give rise to a payment or settlement event with respect to any ~~Phantom Share~~SAR that constitutes "nonqualified deferred compensation" (within the meaning of Section 409A), the event constituting the Termination Date must also constitute a "separation from service" (as defined in Treasury Regulation §1.409A-1(h)) in order to give rise to the payment or settlement event for such ~~Phantom Share~~SAR, to the extent required by Section 409A.

w) ~~v)~~ "***Unvested ~~Phantom Shares~~SARs***" means, as of any date, the number of ~~Phantom Shares~~SARs which have not vested as of such date pursuant to Section 5.

x) ~~w)~~ "***Vested ~~Phantom Shares~~SARs***" means, as of any date, the number of ~~Phantom Shares~~SARs which have vested as of such date pursuant to Section 5.

y) ~~x)~~ "***Vesting Date***" has the meaning assigned to such term in Section 5.

3. **Administration.**

a) The Plan shall be interpreted and administered by the Board, provided that the Board may delegate such administrative duties to a compensation committee or any other committee (and all references to the Board in the Plan shall include any authorized delegate of the Board), whose actions shall be final and binding on all Persons, including the Participants, and shall be given the maximum deference permitted by law.

b) The Board (or applicable committee), in its sole discretion, shall have the power, subject to and within the limitations of the express provisions of the Plan, to:

   a. Determine from time to time which officers, employees, non-employee directors, consultants and advisors of the Company or its Affiliates shall be designated as Participants entitled to participate in the Plan and the number and terms of the ~~Phantom Shares~~SARs granted;

   b. Make determinations and interpretations required under the Plan, including the amount of any payments to Participants;

   c. Establish rules and regulations it deems necessary or desirable for the administration of the Plan;

   d. Exercise all authority with respect to the Plan granted to it hereunder and otherwise; and

e. Correct any defect, supply any omission and/or reconcile any inconsistency in the Plan or any Award Agreement.

c) No member of the Board (or the applicable committee) shall be personally liable for any action, determination or interpretation made in good faith with respect to the Plan or any payment paid hereunder, and all members of the Board (or the applicable committee) shall be fully indemnified and held harmless by the Company or its successor in respect of any such action, determination or interpretation.

4. **Awards Subject to the Plan.** The ~~aggregate Phantom Shares that shall be eligible for grant pursuant to the Plan shall provide the Participants with the right to receive payments relating to the value no more than fifteen (15%) percent of the total aggregate value of Shares of the Company (not including amounts payable~~ maximum number of SARs that may be granted under the Plan~~) as of the Effective Date~~ is 2,143. Any ~~Phantom Shares~~ SARs granted that are subsequently forfeited or cancelled under the Plan, due to a failure to vest, termination of employment or otherwise, shall again become available for grant under the Plan. In the event of a transaction involving the Company that is not an Exit Event (including, without limitation, any distribution, stock split, extraordinary cash distribution, recapitalization, reorganization, merger, amalgamation, consolidation, stock exchange  split-up, spin-off, sale of assets or subsidiaries, combination or exchange of shares of stock), the Board may, in the manner it determines equitable in its sole discretion, adjust the number of ~~Phantom Shares~~ SARs available under the Plan and granted to Participants to reflect the transactions.

5. **Terms and Conditions of the Awards; Vesting; ~~Distributions~~ Exercise.**

a) <u>Award Agreements</u>. Each ~~Phantom Share~~ SAR granted under the Plan shall be evidenced by an Award Agreement, specifying the number of ~~Phantom Shares~~ SARs granted, vesting conditions, ~~grant date~~ Grant Date, the Fair Market Value of a Share as of the Grant Date, and such other terms and conditions as specified by the Board, in its sole discretion, consistent with the Plan. Each Award Agreement shall be subject to the applicable terms of the Plan. By agreeing to participate in the Plan and executing an Award Agreement, the Participant acknowledges and agrees that he or she (i) has reviewed and understands the terms of the Plan and (ii) shall be bound by the terms of the Plan.

b) <u>General Vesting Provisions</u>. Subject to the terms and conditions of the Plan and except as otherwise provided in the Award Agreement, ~~twenty-five~~ fifteen percent (~~25~~15%) of the Participant's ~~Phantom Shares~~ SARs issued pursuant to an Award Agreement shall become Vested ~~Phantom Shares~~ SARs on the first anniversary of the Grant Date ~~(the "*Initial Vesting Date*")~~; thereafter, ~~six and 25/100 percent (6.25%)~~ fifteen percent (15%) of such SARS shall become Vested SARs on the second, third, and fourth anniversaries of the Grant Date; and thereafter, forty percent of the Participant's ~~remaining Phantom Shares~~ SARs issued pursuant to such Award Agreement shall become Vested ~~Phantom~~

7

~~Shares on the first day of each calendar quarter immediately following the Initial Vesting Date (each such anniversary a "*Vesting Date*") until such Phantom Shares become fully vested (the "*Final Vesting Date*"~~SARs upon the occurrence of an Exit Event, provided that an Exit Event occurs (each such date or event upon which SARS granted pursuant to such Award Agreement shall become vested a "*Vesting Date*"); provided that, if the Participant's Termination Date occurs prior to ~~the Final Vesting Date~~an Exit Event, the Participant's ~~Phantom Shares~~SARs shall be treated as follows:

i. ~~a.~~Termination for Cause or Voluntary Termination. If a Participant's Termination Date occurs at any time due to a termination for Cause or a voluntary termination prior to an Exit Event, the Participant shall immediately forfeit all of his or her ~~Phantom Shares~~SARs (including any Vested ~~Phantom Shares~~SARs).

ii. ~~b.~~Termination without Cause, Death or Disability. If a Participant's Termination Date occurs at any time due to a termination without Cause ~~or~~, by reason of the Participant's Death, or due to a termination by reason of Disability, the Participant's Unvested ~~Phantom Shares~~SARs shall be automatically forfeited without consideration.

iii. ~~c.~~Exit Event. If an Exit Event occurs at any time prior to the ~~Final Vesting date~~fourth anniversary of the Grant Date and prior to a Participant's Termination Date, the Participant shall become immediately vested in all of his or her Unvested ~~Phantom Shares~~SARs as of such Exit Event. If no Exit Event shall occur prior to the 7th anniversary of the Grant Date for such SARS, such SARs shall be automatically forfeited without consideration.

c) Each ~~Phantom Share~~SAR granted under the Plan shall be nontransferable, other than by will or the laws of descent and distribution.

d) Automatic Exercise. Vested SARs shall be automatically exercised without any action on the part of the Participant on:

i. In the case of SARs vesting on an anniversary of the Grant Date, on the date on which either of the following first occurs: (i) an Exit Event, or (ii) a Participant's termination of employment or service with the Company or any of its Affiliates, including by reason of death or Disability;

ii. In the case of SARs that will only vest on an Exit Event, the date on which the Exit Event occurs;

the date on which a SAR is automatically exercised being the "*Exercise Date*").

8

e) Amount Payable.  Subject to Section 5(h), the amount payable to a Participant in settlement of the Participant's exercise of his or her Vested SARs shall be equal to the Spread Amount per Vested SAR times the number of Vested SARS held by the Participant (the "***Payment Amount***").

f) d) On a Payment Event, the Board shall determine the Fair Market Value of a Share. Each Participant who experiences a Payment Event and who holds Vested Phantom Shares Time of Payment.  Upon a Participant's automatic exercise of Vested SARs (determined after applying the provisions of this Section 5) shall be entitled to a lump sum payment in an amount equal to the product of (a) the Fair Market Value of a Share on the Payment Event (determined after taking into account the payments required to Participants who hold Phantom Shares pursuant to this Plan) and (b) the total number of Vested Phantom Shares (determined after applying the provisions of this Section 5) held by such Participant (such payment amount referred to as a "***Distribution Date Payment***").  Any such Distribution Date Payment to or on behalf of a Participant, the Payment Amount shall be paid a single sum payment and shall be made within sixty (60) days following the date of the Payment Event.  All Distribution Date Payments Exercise Date.  All payments in settlement of a Participant's automatic exercise of Vested SARs shall be made in cash (or, if the consideration received on an Exit Event is property, the Distribution Date Payment payment may be made in the same combination of cash and/or property as received by the Shareholders).

g) Termination of Employment without Cause.  In the case of the Participant's termination of employment without Cause, any payment due to a Participant shall be subject to the execution and non-revocation of general release of claims, in a form provided by the Company.

h)  If the Payment Event is Exit Event If the Participant's Vested SARs are automatically exercised by reason of an Exit Event and the Exit Event provides for Contingent Payments, each Vested Phantom Share SAR shall be entitled to an amount per Vested Phantom Share SAR equal to the amount per Share received by the Company or its shareholders as Contingent Payments, paid at the same time as such Contingent Payments are paid to the Company or its Shareholders, provided, however, that that a Contingent Payment that is not otherwise exempt from Code Section 409A shall only be made in accordance with Code Section 409A and Treasury Regulation Section 1.409A-3(i)(5)(iv), and, notwithstanding anything herein to the contrary, a Participant shall not have a legally binding right to receive such payments to the extent that such payments would constitute deferred compensation subject to Code Section 409A and would not otherwise satisfy the requirements of Treasury Regulation Section 1.409A-3(i)(5)(iv).

i) e) In the sole discretion of the Board, if a Participant violates in a material respect a Restrictive Covenant prior to any payment date for any amount pursuant to this Plan, and such violation, if curable, is not substantially cured within thirty (30) days following the

756357319

~~Company's written notification to the Participant,~~ then, in the sole discretion of the Board, the Participant shall forfeit all of the Participant's ~~Phantom Shares~~SARs (including any Vested ~~Phantom Shares~~SARs) and the Participant shall have no further rights under or with respect to, any such ~~Phantom Shares~~SARs pursuant to the Plan.

j) ~~f)~~ Clawback. Notwithstanding anything in the Plan to the contrary, all ~~Phantom Shares~~SARs granted under the Plan and any payments made with respect to such ~~Phantom Shares~~SARs pursuant to the Plan shall be subject to clawback or recoupment as permitted or mandated by applicable law, rules, regulations or Company policy as enacted, adopted or modified from time to time (any of the foregoing, a "***Clawback Policy***"). By accepting an award of ~~Phantom Shares~~SARs under the Plan, each Participant agrees and consents to the Company's application, implementation and enforcement of any Clawback Policy and expressly agrees that the Company may take such actions as are necessary to effectuate the Clawback Policy or applicable law with respect to any ~~Phantom Shares~~SARs without further consent or action being required by the Participant.

6. **Amendment or Termination of the Plan.** Notwithstanding anything herein to the contrary, the Board may at any time terminate or amend, modify or suspend the Plan, including, without limitation, any related documents, in whole or in part; provided, however, that without the consent of the affected Participant (or his or her Beneficiary) no termination, amendment, modification or suspension of the Plan or any related documents shall materially and adversely alter or impair the rights of a Participant (or his or her Beneficiary) under or with respect to any ~~Phantom Shares~~SARs then outstanding under the Plan. The Board may also, without the consent of any Participant, make such amendments or modifications to the Plan, any related documents, or any outstanding ~~Phantom Shares~~SARs as the Board determines, in its sole discretion, are reasonably necessary in order for the Plan or such ~~Phantom Shares~~SARs to (a) comply with, or avoid being subject to, Section 409A and (b) comply with, or take into account changes in, applicable tax laws, accounting rules and other applicable laws, rules and regulations.

7. **Securities Compliance.** The Plan is intended to be a written compensatory benefit plan within the meaning of Rule 701 promulgated under the Securities Act of 1933. A ~~Phantom Share~~SAR shall not be effective unless such ~~Phantom Share~~SAR is in compliance with all applicable federal and state securities laws, rules and regulations of any governmental body, as they are in effect on the date of grant of the ~~Phantom Share~~SAR and also on the date of exercise or other issuance. The Company shall be under no obligation to register any securities with respect to the Plan with the Securities and Exchange Commission or to effect compliance with the exemption, registration, qualification or listing requirements of any state securities laws, stock exchange or automated quotation system, and the Company shall have no liability for any inability or failure to do so.

8. **No Implied Rights**. Neither a Participant nor any other Person shall, by reason of participation in the Plan, acquire any right in or title to any assets, funds or property of the Company or any of its Affiliates whatsoever, including, without limitation, any specific funds,

10

assets, or other property which the Company or any of its Affiliates, in their sole discretion, may set aside in anticipation of a liability under the Plan. Neither a Participant nor any other Person shall, by reason of participation in the Plan, acquire any rights of a Shareholder, including, without limitation, any voting rights, information rights, rights to dividends or distributions or any other rights associated with shareholders in a Delaware corporation. A Participant shall have only a contractual right to a Distribution Date Payment, if any, payment under the Plan, unsecured by any assets of the Company or any of its Affiliates, and nothing contained in the Plan shall constitute a guarantee that the assets of the Company or any of its Affiliates shall be sufficient to pay any benefits to any Person. The grant and holding of Phantom SharesSARs shall not represent the grant or holding of an ownership interest in the Company or any of its Affiliates.

9. **Successors**. The Plan shall be binding upon, and inure to the benefit of, the Company and its successors and assigns, and upon any Person acquiring, whether by merger, consolidation, purchase of assets or otherwise, all or substantially all of the Company's assets and business.

10. **No Guarantee of Future Service.** Selection of an individual as a Participant under the Plan shall not provide any guarantee or promise of continued employment or service of the Participant with the Company or any of its Affiliates, and the Company retains the right to terminate the employment of any employee, and the service of any non-employee director, consultant and advisor, at any time, with or without Cause, for any reason or no reason, except as may be restricted by law or contract.

11. **Withholding.** The payment of all amounts in respect of Phantom SharesSARs under the Plan are subject to withholding of all applicable taxes. The Company and its Affiliates shall have the right to deduct from all cash distributions made pursuant to the Plan any federal, state or local taxes required to be withheld with respect to such distributions. Except as otherwise provided by the Board and subject to applicable law, in the event of a distribution of Shares or other equity or property, such withholding obligations may be satisfied (i) through cash payment by the Participant; or (ii) through the surrender of Shares or other equity or property which the Participant is otherwise entitled under the Plan (including Shares otherwise distributable pursuant to Plan); provided, however, that such Share under this clause (ii) may be used to satisfy not more than the maximum individual tax rate for the Participant in applicable jurisdiction for such Participant (based on the applicable rates of the relevant tax authorities (for example, federal, state, and local), including the Participant's share of payroll or similar taxes, as provided in tax law, regulations, or the authority's administrative practices, not to exceed the highest statutory rate in that jurisdiction, even if that rate exceeds the highest rate that may be applicable to the specific Participant). In no event whatsoever shall the Company or any Affiliate be liable for any taxes, penalties or interest that may be imposed on a Participant under Section 409A or under any other similar provision of state tax law in connection with such Participant's participation in the Plan or otherwise. By agreeing to participate in the Plan, the Participant acknowledges and agrees that he or she shall be liable for all taxes imposed on him or her as a result of participation in the Plan and in relation to payments received pursuant to the Plan, including, but not limited to, Section 409A and any other similar provision of state tax law.

12. **Funding.** Nothing in the Plan shall be construed to create a trust or to establish or evidence any Participant's claim of any right other than as an unsecured general creditor with respect to any payment to which he or she may be entitled.

13. **Non-assignability.** Subject to Section 5(c) of the Plan, to the maximum extent permitted by law, a Participant's rights or benefits under the Plan shall not be subject to anticipation, alienation, sale, assignment, pledge, encumbrance or charge, and any attempt to anticipate, alienate, sell, assign, pledge, encumber or charge the same shall be void.

14. **Section 409A.** The payments due under the Plan are intended to comply with Section 409A or an exemption thereunder and shall be construed and administered in accordance with Section 409A.  Notwithstanding any other provision of the Plan, payments of "nonqualified deferred compensation" provided under the Plan may only be made upon an event and in a manner that complies with Section 409A or an applicable exemption.  If a payment window spans two calendar years, the payment will be made in the second year.  Any payments under the Plan that may be excluded from Section 409A as a short-term deferral shall be excluded from Section 409A to the maximum extent possible.  For the avoidance of doubt, each payment provided under the Plan, ~~including the Distribution Date Payment,~~ shall be treated as separate payments. Notwithstanding any other provision in the Plan to the contrary, if the Participant is a "specified employee" on his or her Termination Date, any payment payable under the Plan that constitute a "deferral of compensation" within the meaning of Treas. Reg. § 1.409A-1(b) (that are not otherwise exempt from the provisions of Section 409A) that would otherwise be paid or provided hereunder during the six-month period commencing on the Termination Date of the Participant, will be deferred until the first day of the seventh month following the separation from service if such deferral is necessary to avoid the additional tax under Section 409A.

15. **Effective Date; Term of Plan.** The Plan shall become effective on the Effective Date.  The Plan shall remain in effect until it is revised or terminated by further action of the Board (or applicable committee).

16. **No Restriction on Right of Company to Effect Corporate Changes**.  Neither the Plan nor the grant of ~~Phantom Shares~~SARs hereunder shall affect in any way the right or power of the Company or its Shareholders to make or authorize any or all adjustments, recapitalizations, reorganizations or other changes in the Company's capital structure or its business.

17. **Governing Law.**  The Plan and any Award Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without giving effect to the conflict of laws provisions thereof that would require the application of laws of another jurisdiction.  Nothing in the Plan or any Award Agreement should be interpreted as restricting or prohibiting Participants from filing a charge or complaint with the U.S. Equal Employment Opportunity Commission, the National Labor Relations Board, the Department of Labor, the Occupational Safety and Health Commission, or any other federal, state, or local administrative agency charged with investigating and/or prosecuting complaints under any applicable federal, state or municipal law or regulation (except that each Participant acknowledges that he or she may not recover any

monetary benefits in connection with any such claim, charge or proceeding).  A federal, state, or local agency would also be entitled to investigate the charge in accordance with applicable law.

18. **Notices.**  Except as expressly set forth to the contrary in the Plan, all notices, requests or consents provided for or required to be given hereunder shall be in writing and shall be deemed to be duly given if personally delivered or mailed by certified mail, return receipt requested, or nationally recognized overnight delivery service with proof of receipt maintained, if to the Company, at its principal office and, if to a Participant, at the last known address for the Participant on the Company's records (or such address as the Company or Participant, may designate in writing).  Any such notice shall, if delivered personally, be deemed received upon delivery; shall, if delivered by certified mail, be deemed received upon the earlier of actual receipt thereof or five (5) days after the date of deposit in the United States mail, as the case may be; and shall, if delivered by nationally recognized overnight delivery service, be deemed received upon the first (1st) business day after the date of deposit with the delivery service.  The Company or a Participant, as applicable, may waive any required notice by written waiver.

19. **Severability.**  Each provision of the Plan shall be considered severable and, if for any reason any provision or provisions herein is determined to be invalid, unenforceable or illegal under any existing or future law, such invalidity, unenforceability or illegality shall not impair the operation of or affect those portions of the Plan which are valid, enforceable and legal.

20. **Dispute Resolution.**

(a)    In exchange for the benefits of the speedy, economical, and impartial dispute resolution of arbitration and subject to Section 20 of the Plan, the and Company and the Participants choose to waive their right to resolution of disputes in a court of law by judge or jury, and instead agrees that any controversy, dispute or claim ("Dispute") arising out of or relating to the Plan or any Award Agreement will be settled by confidential, expedited, final and binding arbitration having a seat in New York, New York and administered in accordance with the Commercial Arbitration Rules of the American Arbitration Association (the "Arbitration Rules") then in effect. Any Dispute with respect to the enforceability of this Section 20 or whether a Dispute is subject to this Section 20 of the Plan shall be resolved by ~~mediation or~~ arbitration~~, as applicable~~. The obligation to ~~mediate or~~ arbitrate survives the termination of the Plan or any Award Agreement.

(b)    The Company and the Participants shall maintain the confidential nature of the ~~mediation or~~ arbitration proceeding, except as may be necessary in connection with a court application for a preliminary remedy, a court action to challenge or enforce the arbitration award, or as otherwise required by applicable law, including any judicial decision. The Company and the Participants further agree that the ~~mediator or~~ arbitrator shall render the arbitration award in writing and explain the decision which, to the extent possible, shall not include confidential information.

(c)    The Company and the Participants waive to the fullest extent permitted by applicable law any rights to appeal or to review of the arbitration award by any court or tribunal. The Company and the Participants consent to exclusive jurisdiction of, and agree that sole venue will lie in, any state or federal court sitting in the State of New York, for any allowable judicial

756357319

proceeding relating to any arbitration under the Plan or any Award Agreement, including entry of a judgment on the arbitration award.

(d)     Notwithstanding anything to the contrary in this Section 20 of the Plan, any party to a Dispute may file an action in any state or federal court sitting in the State of New York to obtain provisional injunctive or equitable relief in accordance with Section 20 of the Plan to prevent immediate and irreparable harm and to ensure that the relief sought by the aggrieved party is not rendered ineffectual pending the arbitration. Each of the Company and the Participants waives any defense of inconvenient forum to the maintenance of any action or proceeding so brought and waives any bond, surety, or other security that might be required of any other party thereto with respect to such defense. The Company and the Participants  may make service on each other by sending or delivering a copy of the process to the party to be served at the address and in the manner provided for the giving of notices in Section 20 of the Plan. Nothing in Section 20 of the Plan, however, shall affect the right of the Company and the Participants to serve legal process in any other manner permitted by applicable law or at equity.

(e)     In the event of a conflict between this Section 20 of the Plan and the Arbitration Rules, this Section 20 of the Plan shall control.

In accordance with the authorizations and directions of the Board of Directors of the Company, the Plan is hereby adopted effective as of the date signed below.

**[Novation Companies, Inc.]**

By:     _____

Name: Daniel Strauss

Title: Chief Executive Officer

Date:     _____
_____October 24, 2023

14

**Exhibit A**

**Form of Award Agreement**

See attached.

756357319

[**NOVATION COMPANIES, INC.**]

~~**PHANTOM SHARE INCENTIVE**~~**STOCK APPRECIATION RIGHTS** **PLAN**

**AWARD AGREEMENT**

[DATE]


[~~Name~~NAME]

Dear ~~[Name]~~:  [NAME]

    In recognition of the important role you play in the success of Novation Companies, Inc. (the "Company"), you have been designated as eligible to participate in the Novation Companies, Inc. ~~Phantom Share Incentive~~Stock Appreciation Rights Plan , as amended from time to time (the "Plan"), a copy of which is attached hereto and incorporated by reference.  The Company is not legally required to offer you participation in the Plan, or any payments thereunder, and the terms and conditions of payment of the Plan and your award have been set by the Board (as defined in the Plan) in its sole discretion. Amounts, if any, payable to you under this award shall only be paid in accordance with and shall be governed by the terms of the Plan. Nothing herein shall alter the at-will status of your employment and this letter shall not be construed to be a guarantee of employment for any period of time.

    The terms of your Plan participation are as follows:

- Grant Date:  [Date]

- Number of ~~Phantom Shares~~Stock Appreciation Rights:   [Number]

- Grant Date Fair Market Value of a Share:  [Number]

- Vesting:  As ~~provided by~~set forth in Section 5 of the Plan

**Other terms and conditions**:

    [You acknowledge and agree that you are subject to the restrictive covenants set forth in [Section References] of your employment agreement dated as of [Date] and that such covenants survive your termination of employment.

**Miscellaneous:**

    While the Company and its directors and officers strive for the Plan to comply with or be exempt from Code Section 409A and Code Section 457A, neither the Company, nor any of its affiliates, or their respective directors, officers, managers, members, shareholders, employees, agents, partners or attorneys guarantee and none shall be liable for any failure of the Plan to comply with or fail to be exempt from Code Section 409A or Code Section 457A.  **Participants**

**are hereby advised to consult their personal tax advisors with respect to amounts payable under the Plan.**

Capitalized terms not herein defined shall have the meanings ascribed them in the Plan. Any conflict of this agreement with the terms of the Plan shall be interpreted in favor of the terms of the Plan. The obligations of the Company to make payments of any unpaid award hereunder shall be contractual only and all such payments shall be made from the general assets of the Company. Your having or claiming a right to payments of any unpaid award hereunder shall rely solely on the unsecured promise of the Company and shall be treated and have a status no greater than that of an unsecured creditor of the Company, and nothing herein shall be construed to give any such individual any right, title, interest or claim in or to any specific asset, fund, reserve, account or property of any kind whatsoever owned by the Company or in which it may have any right, title or interest now or in the future.

The award shall be administered by the Board in accordance with the terms of the Plan. The award is designed to provide an on-going, pecuniary incentive for Participants to produce their best efforts to increase the value of the Company. The award is not intended to provide retirement income or to defer the receipt of payments hereunder to the termination of a participant's employment or beyond. The award is thus intended to be a cash bonus program (as described in the federal Employee Retirement Income Security Act of 1974, as amended ("**ERISA**") Regulation Section 2510.3-2(c) or any successor thereto), and not a pension or welfare benefit plan that is subject to ERISA, and shall be construed accordingly. All interpretations and determinations hereunder shall be made on a basis consistent with the Award's status as a bonus program that is not an employee benefit plan subject to ERISA. No right or benefit or payment under this letter shall be subject to assignment, sale or other transfer nor shall it be liable or subject in any manner to attachment, garnishment or execution. Rights hereunder shall not confer upon you any right with respect to the continuation of your employment or service with the Company or interfere in any way with the right of the Company to terminate your employment or service at any time and for any or no reason. This letter shall be binding upon and shall inure to the benefit of the successors and assigns of the parties hereto. This letter and the rights and obligations hereunder shall be governed by the laws of the State of Delaware without giving effect to conflict of law principles that would require the application of laws of another jurisdiction. Amounts payable hereunder shall be subject to applicable withholding as required by applicable law. In the event that any provision of this arrangement shall be held illegal, invalid or unenforceable for any reason, such term or provision shall be fully severable, but shall not affect the remaining terms and provisions of this arrangement, and the arrangement shall be construed and enforced as if the illegal, invalid, or unenforceable term or provision was not included herein.

*[Remainder of page intentionally left blank.]*

We believe that your participation in the Plan aligns your interests with the success of the Company.  We appreciate your continued quality service to the Company, and look forward to our continued mutual successes.

Very truly yours,

**NOVATION COMPANIES, INC.**

_____
By:

**Executive:**

_____
Name: [NAME]

# **EXHIBIT F**

**Schedule of Assumed Executory Contracts**

| Number | Debtor Case # | Debtor Counterparty | Non-Debtor Counterparty | Description of Contract or Lease |
|---|---|---|---|---|
| 1 | 23-11153 | Novation Companies, Inc. | 8x8, Inc.<br>675 Creekside Way<br>Campbell, CA 95008 | VIRTUAL OFFICE AND VIRTUAL CONTACT CENTER SERVICE TERMS |
| 2 | 23-11153 | Healthcare Staffing, Inc. | AC Depot, Inc.<br>485 Prince Charles Place<br>Alpharetta, GA 30022 | JANITORIAL SERVICES |
| 3 | 23-11153 | Novation Companies, Inc. | ADP, Inc.<br>P.O. Box 842875<br>Boston, MA 02284 | PAYROLL PROCESSING |
| 4 | 23-11153 | Healthcare Staffing, Inc. | AFCO Insurance Premium Finance<br>5600 N. River Road<br>Suite 400<br>Rosemont, IL 60018-5187 | PL/GL/UMBRELLA PREMIUM FINANCE AGREEMENT - PROMISSORY NOTE |
| 5 | 23-11153 | Novation Companies, Inc. | AFCO Insurance Premium Finance<br>5600 N. River Road<br>Suite 400<br>Rosemont, IL 60018-5187 | PREMIUM FINANCE AGREEMENT - PROMISSORY NOTE |
| 6 | 23-11153 | Healthcare Staffing, Inc. | Allied World Specialty Insurance Company<br>3424 Peachtree Road Ne<br>Suite 550<br>Atlanta, GA 30326 | EMPLOYEE PRACTICES LIABILITY INSURANCE POLICY (INCLUDES ALL SUBSEQUENT RENEWALS) |
| 7 | 23-11153 | Healthcare Staffing, Inc. | American United Life Insurance Company<br>P.O. Box 6123<br>Indianapolis, IN 46206-6123 | GROUP TERM LIFE INSURANCE WITH AN ACCELERATED DEATH BENEFIT |
| 8 | 23-11154 | Healthcare Staffing, Inc. | American United Life Insurance Company<br>P.O. Box 6123<br>Indianapolis, IN 46206-6123 | GROUP VOLUNTARY TERM LIFE INSURANCE WITH AN ACCELERATED DEATH BENEFIT |
| 9 | 23-11155 | Healthcare Staffing, Inc. | American United Life Insurance Company<br>P.O. Box 6123<br>Indianapolis, IN 46206-6123 | GROUP WORKSITE DISABILITY INSURANCE - LONG TERM |
| 10 | 23-11156 | Healthcare Staffing, Inc. | American United Life Insurance Company<br>P.O. Box 6123<br>Indianapolis, IN 46206-6123 | GROUP WORKSITE DISABILITY INSURANCE - SHORT TERM |
| 11 | 23-11153 | Healthcare Staffing, Inc. | Anthem Blue Cross Blue Shield<br>P.O. Box 5283<br>Carol Stream, IL 60197-5283 | CSP BLUE OCEAN ACCESS POS 2500/10%/4500 MEDICAL BENEFIT BOOKLET |
| 12 | 23-11153 | Healthcare Staffing, Inc. | Anthem Blue Cross Blue Shield<br>P.O. Box 5283<br>Carol Stream, IL 60197-5283 | CSP BLUE OCEAN ACCESS POS 6300/30%/6850 MEDICAL BENEFIT BOOKLET |

| Number | Debtor Case # | Debtor Counterparty | Non-Debtor Counterparty | Description of Contract or Lease |
|---|---|---|---|---|
| 13 | 23-11153 | Healthcare Staffing, Inc. | Automated Business Designs, Inc.<br>8755 W. Higgins<br>Suite 600<br>Chicago, IL 60631 | CLOUD SERVICES TERMS AND CONDITIONS |
| 14 | 23-11153 | Novation Companies, Inc. | Chubb Limited<br>15 Mountain View Rd<br>Warren, NJ 07059 | ERISA BOND INSURANCE |
| 15 | 23-11153 | Novation Companies, Inc. | CSC, Inc.<br>251 Little Falls Drive<br>Wilmington, DE 19808 | REGISTERED AGENT SERVICES |
| 16 | 23-11153 | Novation Companies, Inc. | CNA Financial Corp.<br>5565 Glenridge Connector<br>Suite 600<br>Atlanta, GA 30342-4756 | WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE |
| 17 | 23-11153 | Novation Companies, Inc. | CNA Financial Corp.<br>5565 Glenridge Connector<br>Suite 600<br>Atlanta, GA 30342-4756 | PROPERTY, CRIME, AND GENERAL LIABILITY INSURANCE POLICY |
| 18 | 23-11153 | Novation Companies, Inc. | CNA Financial Corp.<br>5565 Glenridge Connector<br>Suite 600<br>Atlanta, GA 30342-4756 | BUSINESS AUTO POLICY |
| 19 | 23-11153 | Novation Companies, Inc. | CNA Financial Corp.<br>5565 Glenridge Connector<br>Suite 600<br>Atlanta, GA 30342-4756 | CNA PARAMOUNT EXCESS AND UMBRELLA LIABILITY |
| 20 | 23-11153 | Healthcare Staffing, Inc. | Eyemed Vision Care, LLC<br>P.O. Box 632530<br>CIncinnati, OH 45263-2530 | SUMMARY OF BENEFITS: VISION CARE SERVICES |
| 21 | 23-11153 | Healthcare Staffing, Inc. | Healthcare Staffing, Inc.<br>1724 Phoenix Pkwy<br>Building 600<br>College Park, GA 30349 | EMPLOYEE HANDBOOK |
| 22 | 23-11153 | Healthcare Staffing, Inc. | Hiscox Insurance Company, Inc.<br>5 Concourse Pkwy<br>Suite 2150<br>Atlanta, GA 30328 | CRIME TERMS AND CONDITIONS CSUCRI P0001A CW (12-22) |

| Number | Debtor Case # | Debtor Counterparty | Non-Debtor Counterparty | Description of Contract or Lease |
|---|---|---|---|---|
| 23 | 23-11153 | Healthcare Staffing, Inc. | IntelligIS Inc.<br>107 Technology Parkway<br>Peachtree Corners, GA 30092 | INTELLICARE AGREEMENT |
| 24 | 23-11153 | Healthcare Staffing, Inc. | Landmark American Insurance Company<br>945 East Paces Feery Road<br>Suite 1800<br>Atlanta, GA 30326 | PROFESSIONAL LIABILITY INSURANCE |
| 25 | 23-11153 | Healthcare Staffing, Inc. | Medcor, Inc.<br>P.O. Box 75570<br>Cleveland, OH 44101-4755 | TERMS OF SERVICE MEDCOR INJURY TRIAGE SERVICES |
| 26 | 23-11153 | Healthcare Staffing, Inc. | Metropolitan Telecommunications<br>P.O. Box 9660<br>Manchester, NH 03108-9660 | MASTER SERVICE AGREEMENT |
| 27 | 23-11153 | Healthcare Staffing, Inc. | Michael Bach d/b/a Gekko Acquisitions<br>617 E 2nd Street<br>Augusta, KY 41002 | BUSINESS MANAGEMENT AGREEMENT |
| 28 | 23-11153 | Healthcare Staffing, Inc. | New Horizons Behavioral Health<br>2100 Comer Avenue<br>Columbus, GA 31904 | HEALTHCARE STAFFING AGREEMENT AND ALL SUBSEQUENT ADDENDUMS |
| 29 | 23-11153 | Healthcare Staffing, Inc. | PandaDoc, Inc.<br>Department LA 24920<br>Pasadena, CA 91185-4920 | MASTER SERVICE AGREEMENT AND SUBSEQUENT RENEWAL AGREEMENT FOR HEALTHCARE STAFFING INCORPORATED |
| 30 | 23-11153 | Healthcare Staffing, Inc. | Phoenix Park ATL Property LP<br>c/o Caiola & Rose, LLC<br>Attn: Kimberly Reeves, Esq.<br>125 Clairemont Ave., Suite 240<br>Decatur, GA 30030 | LEASE AGREEMENT AND ALL SUBSEQUENT AMENDMENTS |
| 31 | 23-11153 | Healthcare Staffing, Inc. | ProPraxis Insurance<br>32 Old Slip<br>5th Floor<br>New York, NY 10005 | HEALTHCARE UMBRELLA INSURANCE POLICY |
| 32 | 23-11153 | Healthcare Staffing, Inc. | Quadient Leasing USA, Inc.<br>PO Box 6813<br>Carol Stream, IL 60197-6813 | PRODUCT LEASE AGREEMENT - CORPORATE |
| 33 | 23-11153 | Healthcare Staffing, Inc. | Quadient Leasing USA, Inc.<br>PO Box 6813<br>Carol Stream, IL 60197-6813 | PRODUCT LEASE AGREEMENT - BRUNSWICK |

| Number | Debtor Case # | Debtor Counterparty | Non-Debtor Counterparty | Description of Contract or Lease |
|---|---|---|---|---|
| 34 | 23-11153 | Healthcare Staffing, Inc. | Quadient Leasing USA, Inc.<br>P.O. Box 6813<br>Carol Stream, IL 60197-6813 | PRODUCT LEASE AGREEMENT - AMERICUS |
| 35 | 23-11153 | Healthcare Staffing, Inc. | RLI Corp.<br>3655 North Point Parkway Preston Ridge I<br>Suite 400<br>Alpharetta, GA 30005 | HIRED AND NON-OWNED AUTOMOBILE INSURANCE |
| 36 | 23-11153 | Healthcare Staffing, Inc. | Ring Central, Inc.<br>14675 Dallas Pkwy<br>Suite 200<br>Dallas, TX 75254 | RING CENTRAL OFFICE AND GLIP PLAN PURCHASE AGREEMENT |
| 37 | 23-11153 | Novation Companies, Inc. | Starstone Specialty Insurance Company<br>Harborside Financial Center Plaza 5<br>Suite 2600<br>Jersey City, NJ 07311 | MANAGEMENT AND PROFESSIONAL LIABILITY FOLLOW FORM INSURANCE AND AMENDED DECLARATIONS |
| ~~38~~ | ~~23-11153~~ | ~~Novation Companies, Inc.~~ | ~~Stock Vantage, Inc.~~<br>~~600 3rd Ave SW~~<br>~~Calgary, AB T2P 0G5~~<br>~~Canada~~ | ~~STOCKVANTAGE ONLINE SERVICES TERMS OF SERVICE~~ |
| 38 | 23-11153 | Novation Companies, Inc. | Texas Insurance Company<br>333 Guadalupe Street<br>Austin, TX 78701 | EXCESS LIABILITY POLICY AND POLICY PERIOD EXTENSION ENDORSEMENT |
| 39 | 23-11153 | Healthcare Staffing, Inc. | Travelers Property casualty Company of America<br>Travelers CL Remittance Center<br>1 Town Sq.<br>Hartford, CT 06813 | WORKERS COMPENSATION AND EMPLOYERS LIABILITY POLICY |
| 40 | 23-11153 | Novation Companies, Inc. | Unit4 Business Software, Inc.<br>900 Linton Blvd.<br>Suite 201B<br>Delray Beach, FL 33444 | SOFTWARE LICENSE AND MAINTENANCE AGREEMENT |
| 41 | 23-11153 | Healthcare Staffing, Inc. | United Maintenance, Inc.<br>3687 Mcelroy Road<br>Atlanta, GA 30340 | PREVENTATIVE MAINTENANCE PROGRAM AND SUBSEQUENT RENEWAL |
| 42 | 23-11153 | Healthcare Staffing, Inc. | Wells Fargo Financial Leasing, Inc.<br>P.O. Box 77096<br>Minneapolis, MN 55480 | IMAGE MANAGEMENT AGREEMENT - CORPORATE |
| 43 | 23-11153 | Novation Companies, Inc. | XL Specialty Insurance Company<br>70 Seaview Avenue<br>Stamford, CT 06902 | CORNERSTONE A-SIDE MANAGEMENT LIABILITY INSURANCE POLICY AND AMENDED POLICY PERIOD ENDORSEMENT |

| Number | Debtor Case # | Debtor Counterparty | Non-Debtor Counterparty | Description of Contract or Lease |
|---|---|---|---|---|
| 44 | 23-11153 | Novation Companies, Inc. | XL Specialty Insurance Company<br>70 Seaview Avenue<br>Stamford, CT 06902 | PENSION AND WELFARE BENEFIT PLAN FIDUCIARY LIABILITY INSURANCE AND AMENDED POLICY ENDORSEMENT |
| 45 | 23-11153 | Novation Companies, Inc. | XL Specialty Insurance Company<br>70 Seaview Avenue<br>Stamford, CT 06902 | MANAGEMENT LIABILITY AND COMPANY REIMBURSEMENT INSURANCE POLICY AND AMENDED POLICY PERIOD ENDORSEMENT |
| 46 | 23-11153 | Novation Companies, Inc. | David W. Pointer<br>PO Box 402<br>Newman Lake, WA 99025 | EMPLOYMENT AGREEMENT |
| 47 | 23-11153 | Healthcare Staffing, Inc. | Carl M. Reid III<br>c/o Watson Spence, LLP<br>320 Residence Avenue<br>Albany, GA 31701 | SETTLEMENT AGREEMENT, GENERAL RELEASE, AND COVENANT NOT TO SUE |
| 48 | 23-11153 | Healthcare Staffing, Inc. | Mark Edward Hampton<br>609 Brookwater Drive<br>Stockbridge, GA 30281 | EMPLOYMENT AGREEMENT |
| 49 | 23-11153 | Healthcare Staffing, Inc. | Carolyn Kay Campbell<br>11703 Jefferson Street<br>Kansas City, MO 64114 | EMPLOYMENT AGREEMENT |
| 50 | 23-11153 | Healthcare Staffing, Inc. | Richard Rector<br>241 Webney Drive<br>Marietta, GA 30068 | AGREEMENT AND RELEASE |
| 51 | 23-11153 | Healthcare Staffing, Inc. | Eugenia Spivey<br>c/o Ben Barrett Law<br>1050 Crown Pointe Pkwy<br>Atlanta, GA 30338 | SETTLEMENT AGREEMENT, GENERAL RELEASE, AND COVENANT NOT TO SUE |
| 52 | 23-11153 | Healthcare Staffing, Inc. | Hueston Whiteside | CONFIDENTIAL SEVERANCE AND RELEASE AGREEMENT |

# **EXHIBIT G**

**Schedule of Rejected Executory Contracts**

| Number | Debtor Case # | Debtor Counterparty | Non-Debtor Counterparty | Description of Contract or Lease |
|---|---|---|---|---|
| 1 | 23-11153 | Novation Companies, Inc. | Computershare, Inc.<br>Christal Goldman<br>Dept. Ch 19228<br>Palatine, IL 60055-9228 | REVERSE SPLIT EXCHANGE AGENT AGREEMENT |
| 2 | 23-11153 | Novastar Mortgage, LLC | First Secure Data, LLC<br>P.O. Box 860053<br>Shawnee Mission, KS 66286 | SUPPORT SERVICES AGREEMENT |
| 3 | 23-11153 | Novation Companies, Inc. | First Secure Data, LLC<br>P.O. Box 860053<br>Shawnee Mission, KS 66286 | SUPPORT SERVICES AGREEMENT |
| 4 | 23-11153 | Healthcare Staffing, Inc. | Iron Mountain Inc.<br>Attn: Michelle Ehm<br>1 Federal Street Boston<br>Boston, MA 02110 | RECORDS MANAGEMENT STORAGE AND SERVICES |
| 5 | 23-11153 | Novastar Mortgage, LLC | Iron Mountain Inc.<br>Attn: Michelle Ehm<br>1 Federal Street Boston<br>Boston, MA 02110 | RECORDS MANAGEMENT STORAGE AND SERVICES |
| 6 | 23-11153 | Healthcare Staffing, Inc. | Reese & Company, Inc<br>2000 Business Center. Dr<br>Suite 230<br>Savannah, GA 31405 | LEASE AGREEMENT AND ALL SUBSEQUENT AMENDMENTS |
| 7 | 23-11153 | Novation Companies, Inc. | Research Data Group, Inc.<br>455 S.3rd St<br>Boise, ID 83702 | EDGAR CONVERSION AND FILING PORTAL, XBRL TAGGING AND CONSULTATION, AND RELATED SERVICES CONTRACT |
| 8 | 23-11153 | Novastar Mortgage, LLC | Underground Vaults & Storage, Inc.<br>P.O. Box 1723<br>Hutchinson, KS 67504 | STORAGE LEASE AGREEMENT NUMBER 03-0964 |
| 9 | 23-11153 | Novation Companies, Inc. | Underground Vaults & Storage, Inc.<br>P.O. Box 1723<br>Hutchinson, KS 67504 | STORAGE LEASE AGREEMENT NUMBER 03-0420 |
| 10 | 23-11153 | Healthcare Staffing, Inc. | Wells Fargo Financial Leasing, Inc.<br>P.O. Box 77096<br>Minneapolis, MN 55480 | IMAGE MANAGEMENT AGREEMENT - SAVANNAH |
| 11 | 23-11153 | Healthcare Staffing, Inc. | Wells Fargo Financial Leasing, Inc.<br>P.O. Box 77096<br>Minneapolis, MN 55480 | IMAGE MANAGEMENT AGREEMENT - BRUNSWICK |

| | | | | |
|---|---|---|---|---|
| 12 | 23-11153 | Novation Companies, Inc. | Wyse Advisors, LLC<br>51 JFK Parkway<br>First Floor West<br>Short Hills, NJ 07078 | ENGAGEMENT LETTER |
| 13 | 23-11153 | Novation Companies, Inc. | Stock Vantage, Inc.<br>600 3rd Ave SW<br>Calgary, AB T2P 0G5<br>Canada | STOCKVANTAGE ONLINE SERVICES TERMS OF SERVICE |

## **EXHIBIT I**

### **Identity of Initial Board of Directors of**
### **Reorganized Debtors (other than NovaStar)[1]**

The initial board of directors for the Reorganized Debtors, other than NovaStar, shall comprise the following individuals:

1. Daniel Strauss
2. Justin Gregory
3. Jennifer Nam
4. John Scannell
5. Howard M. Amstar
6. Barry A. Igdaloff
7. **William Lenhart**

Board observer (non-voting):  Elizabeth Mazer

---

30898589.1    [1] Amendments are listed in bold and underline font.